[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 222 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 223 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 224 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 225 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 227 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 228 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 229 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 230 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 231 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 232 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 233 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 234 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 236 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 237 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 238 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 239 
The plaintiffs sue to recover of the defendant two mortgage bonds of the Toledo, Norwalk Cleveland Railroad Company. To entitle them to recover, they were bound to establish two facts: 1st. That the two bonds found in possession of the defendant belonged to the plaintiffs. 2d. That the circumstances under which the defendant purchased the bonds were not such as to protect his title. On neither of these points is the evidence very satisfactory.
1. There were no marks about the plaintiffs' bonds tending specially to identify them or to distinguish them from other bonds of the same company, except the numbers. The plaintiffs lost five bonds, numbered respectively from 336 to 340, inclusive. These numbers did not agree with those found in possession of the defendant, which were *Page 240 
225 and 238. This is the first circumstance to show a want of identity. To account for this discrepancy it is claimed that the numbers had been altered from some two of those owned and lost by the plaintiffs. And this alleged alteration is claimed for two purposes: 1st. To aid in the identification of them as the plaintiffs' bonds. 2d. To show that the defendant received them under suspicious circumstances. It is perhaps not improbable that the coupons had been altered, but the proof of the alteration is not very strong or satisfactory. The evidences of alteration relied on were that on one of the bonds and both of the coupons pieces of paper were pasted behind the numbers. On being held up to the light they presented an appearance of thinness of the paper and brightness of the ink where the numbers occurred, as if made on erasures and written anew. It is also claimed that the paper at these places appeared to have been rubbed. Whether these appearances were so suspicious as to deprive the defendant of the character of a bona fide purchaser will be presently considered. The question now is how far, in connection with other circumstances, they tended to establish the identity of these bonds with those belonging to the plaintiffs. The principal ground for claiming this identity is that when the payments for semi-annual interest on the bonds next succeeding the date of plaintiffs' loss became due, no coupons were presented for payment answering to the numbers of the plaintiffs' bonds, butduplicates of five other numbers, 224, 225, 234, 238 and 455 were presented and paid. Such duplicates had never before appeared. There were also produced duplicate bonds numbered 225, 238; that is, one of each of said numbers besides those held by defendant of corresponding numbers. There was also evidence tending strongly to show that no duplicate bonds or coupons were ever issued by the company. This was substantially the case made by the plaintiffs. But there were other circumstances to be considered. Alterations *Page 241 
in the bonds and coupons were not necessarily evidence of fraud. The bonds might have been altered as to their numbers by the officers of the company, before they were issued. There is no proof that they were not. There is no proof that the two bonds produced on the trial numbered 225, 238, corresponding with similar numbers held by the defendant had not been altered, or bore more the appearance of genuineness than the others. There is no proof that the bonds and coupons lost by the plaintiffs were themselves free from suspicious marks, or may not be still outstanding with their true and original numbers. The proof of alteration is not marked or decisive. Some of the bonds were issued without all the coupons attached to them being numbered. The officers of the company were not themselves certain of the fact of alteration. The New York director, to whom the matter was referred, paid the August coupons to the defendant at the next succeeding date after the first presentation of duplicate coupons, notwithstanding he examined the bonds and the company had been notified of the supposed fraud or larceny. There was no proof to show that the numbers inserted in the defendant's bonds were not in the handwriting of the officers of the company, or of the particular officer who filled in the bonds originally. The judge, at the trial, inspected the bonds, and we may perhaps conclude that he was not satisfied they had been tampered with. The proof of identification, and the plaintiffs' ownership of the bonds in suit, is by no means complete. Possibly there was enough to justify and require the submission to the jury of this question of fact. And this makes it necessary to consider the other question in the case.
2. Were there such marks of alteration and defacement upon the bonds and coupons as should discredit them in the market, and deprive the defendant of the protection of a bona fide
purchaser of negotiable paper.
The character of the alleged alterations has been already *Page 242 
referred to: — the thinness of the paper where the numbers were, its rubbed appearance, the brightness of the ink, the patches upon the back. The court, after an inspection of the bonds, held that these appearances were not sufficiently decisive of fraudulent alteration, and dismissed the complaint. I think his decision was correct, or at least should not be reversed, for the following reasons:
(1.) The fact of alteration is consistent with the genuineness and validity of the bonds. It is not shown when the alterations were made, nor that they were not made before the bonds were issued, nor that they are not in the handwriting of the officers of the company.
(2.) The alterations (if any) are in immaterial particulars. The numbers are not an indispensable part of the bonds or coupons, and from that circumstance would not be likely to attract the attention of practical men.
(3.) We are not in a situation to say that the evidences of alteration and erasure may not have been wholly indecisive and unsatisfactory. This question must turn very much upon theappearance of the bonds and the coupons. They cannot well be adequately described by witnesses; at least they are not so. If the signs of alteration were very slight — if the paper was only slightly thinner or slightly rubbed, or the ink only a little brighter, and all this may have been so, they may not have been sufficient to attract the attention of even a cautious and prudent observer. As to the patches on the back, they might not have been likely to be discovered, or might appear to have been made to cover an accidental rent in the paper. The evidence, so far as it stands upon the oral or written testimony of the witnesses, is not of that character or strength that enable us to say that the court erred in holding it insufficient to support a verdict.
(4.) But stronger than all, in my opinion, is the objection that we have not the benefit of an inspection of the papers,
and are, therefore, without a portion of the means *Page 243 
which the court below enjoyed in passing judgment upon the case. I think it a mistake to say that the bonds (if not the coupons also) were not before the court and jury.
The first witness, Birdsall, speaks of them as the two bondsnow shown him. It is stated in his testimony that the bonds inquestion and the coupons annexed to them are as follows, (giving copies thereof). It is then stated "the following coupon was also read in evidence, the same having been detached from the bond, but admitted to belong to it. The question is put to the witness, Hays: "Look at those numbers on the coupons and state whether or not they have been altered." It is evident, also, from the testimony of Coe, that the bonds were submitted to his inspection. The plaintiffs' counsel refers to the condition and appearance of the bonds, in his claim to go to the jury, in opposition to the motion for a non-suit. And the case further states that "the court, after an inspection of said bonds,
refused to submit any question of fact to the jury."
I do not deem it necessary to consider the question whether the court or the jury, in passing upon the case, would have had a legal right to judge for themselves by inspection of the appearances of defacement and alteration as being sufficient or otherwise to put the purchaser upon inquiry. It sufficiently appears that the court, in granting the motion, did, without objection on either side, inspect the papers, and in all probability decided the case, in part, upon the result of such inspection upon his mind. These papers, as is obvious from the opinions of the judges of the superior court, were not before them, and they are not before us. We are, therefore, as was the general term of the superior court, deprived, in part, of the means and instruments of evidence which the trial court enjoyed of arriving at a correct conclusion on the matter in question, and with this partial view of the case cannot safely say, and are not perhaps entitled to say, that the trial court was in *Page 244 
error. It was required of the plaintiffs alleging error to have occurred in the trial of the cause to have affirmatively shown it. It was competent for him, if necessary for the purposes of justice, to have procured the original papers to be sent up to the court above; and not having done so, we are not at liberty to say, upon this incomplete view of the case, that "manifest error hath intervened." The only remedy left for the plaintiffs, in my opinion, is a new action.
The judgment of the general term of the superior court should be reversed, and judgment ordered dismissing the complaint, with costs.