## WYLIE *v.* MISSOURI PAC. RY. Co.

*(Circuit Court, S. D. New York.* February 13, 1890.)

RAILROAD BONDS—SERIAL NUMBERS—ALTERATION AND SALE BY THIEF.

Certain negotiable bonds, part of a large issue made by a railroad corporation, and numbered consecutively, owned by the plaintiff, were stolen, the numbers altered, and afterwards bought in good faith before maturity and for value by a purchaser. In a suit against the corporation to recover the amount of the bonds by the original owner, *held:* (1) That the original owner could not recover if the bonds were outstanding in the hands of a purchaser who acquired good title to them. (2) That the obligation represented by the bonds was not annulled by the alteration of the serial numbers made by a wrong-doer without the privity of the purchaser, as the numbers were a matter extrinsic to the contract, and not a material part thereof.

At Law. Action on bonds.

This was an action brought by Wylie against the Missouri Pacific Railway Company, to recover money due on certain bonds stolen from plaintiff.

*Artemus Holmes,* for plaintiff.

*Winslow S. Pierce,* for defendant.

WALLACE, J. In January, 1876, certain negotiable bonds, for $1,000 each, made by the Pacific Railroad Company of Missouri, and part of an issue of 7,000 bonds of like tenor, then owned by the plaintiff, were stolen from a vault of the Northampton National Bank, where she had left them for safe-keeping. The bonds, like all those of the issue, were numbered. The defendant has succeeded to the liability of the Pacific Railroad of Missouri, and stands in the position of the original obligor for the payment of the bonds. The plaintiff, having tendered a sufficient bond of indemnity to the defendant, brings this suit against it to recover the amount of the bonds. The defendant has proved that the bonds are in the hands of a *bona fide* holder, who purchased them before maturity and for value, after they were stolen, but after the numbers on the bonds had been altered by erasure and a substitution of other numbers. As no one except the thief or some confederate could have had any object in making the alterations, it is reasonable to assume that this was done by some person *particeps criminis,* in order to negotiate the instruments with less risk. The alterations were so skillfully made that they could not be detected by the purchaser. It is plain that if the purchaser acquired a valid title to the bonds as against the plaintiff, she has no cause of action against the defendant, because all her rights have vested in the purchaser, and the defendant is liable to him upon the obligations. The defendant cannot be liable both to the purchaser and to the plaintiff. The bonds being negotiable, the promise to pay runs to the holder, and, if he has acquired them *bona fide* and for value, the plaintiff's title is gone, and the promise is satisfied by the payment to the holder according to their tenor.

It is familiar law that a material alteration in negotiable paper, made intentionally by the owner, avoids the obligation. An alteration, although in a material part, made by a stranger without the privity of

the owner, does not defeat the right of the latter to recover upon the contract. So, also, where the alteration is made by the owner, but is accidentally made, or is in an immaterial matter, not varying the legal effect of the contract, he may still recover upon the obligation. *Rees v. Overbaugh*, 6 Cow. 746; *Nichols* v. *Johnson*, 10 Conn. 192; *Brown* v. *Pinkham*, 18 Pick. 172; *Martendale* v. *Follet*, 1 N. H. 95; *Lee* v. *Alexander*, 9 B. Mon. 25; *Barrington* v. *Bank*, 14 Serg. & R. 405; *Croswell* v. *Labree*, 81 Me. 44;[1] *Colson* v. *Arnot*, 57 N. Y. 253. It is of no consequence in the present case that the alteration was made by the thief. If it was of an immaterial part, the purchaser acquired the title of the plaintiff to the bonds. If it was of a material part, the bonds bought by him were not the genuine bonds. The case resolves itself, consequently, into the single question of law, whether the alteration of the serial number of a negotiable bond is a material alteration. If it is, it destroys the obligation in the hands of an innocent purchaser who has purchased it for value and before maturity. Ordinarily, the number upon a note, check, or bond is only intended to serve the convenience of the maker or owner in distinguishing it from others of a similar tenor. Where bonds are a part of a large issue, exactly alike except as to numbers, the numbers afford a protection to the owner and obligor, against loss through carelessness or crime, which is of substantial practical value. They give to the obligor the means of ascertaining whether a bond which is presented for payment has been already paid or not; and to the holder the means of checking its negotiation, or of tracing and identifying his property, when it has been wrongfully taken from him. Nevertheless, these are matters extrinsic to the contract itself, and for this reason it may well be considered that an alteration of the number is not, in the case of ordinary bonds, a material one. But there are negotiable bonds in which the numbers affect the contract, if, indeed, they do not enter into the contract, between the holder and the obligor; as where corporate mortgage bonds are divided into classes by numbers, some of which are subject to conversion at the option of the obligor into other securities, or to payment before maturity, or to other special conditions, while the rest are not. As to such bonds, when the number determines the right of exercising the option, it would seem to be as vital in qualifying the contract as any other part of the instrument. Of course, it is immaterial whether the special conditions are recited in the bond itself, or whether they are contained in the mortgage securing the issue of bonds; both instruments are to be read together, in ascertaining the terms of the contract. The observations of the master of the rolls in *Suffell* v. *Bank*, 9 Q. B. Div. 555, are in point. He says:

"In an ordinary case, it may be said that changing the number put on a bill of exchange, or on a check, will not affect the contract, and may not be a material alteration. But take the case of a debenture issued by a company, or a bond issued by a turnpike trust or a foreign government, and that the bond is paid according to the number drawn by lot, which is a very common mode of payment. There, although the number would not affect the contract on the face of the instrument, it really would affect the contract in another way,

[1] 16 Atl. Rep. 331.

and I should think there would be no doubt in the world that in such a case an alteration in the number would be a material alteration in the instrument."

Except cases in which the numbers enter into the contract on the face or *dehors* the instrument, the law as stated in Jones, Ry. Sec. § 216, may be accepted as the doctrine of the American decisions.

"The alteration of the number of a negotiable bond not required by law to be numbered, inasmuch as it does not change the tenor of the bond, is immaterial; and, although made with fraudulent intent, does not avoid it against a holder who takes it afterwards in good faith, for value, without notice of the alteration, or reason to suspect it. Marks of such alteration, when slight only, will not discredit the bond in the market, or deprive the holder of the protection of a *bona fide* holder. A purchaser of such bond in open market is not bound to make a close and critical examination of it to escape the imputation of bad faith in the purchase."

Two courts of last resort in this country have explicitly decided that the alteration of the numbers of negotiable bonds is an immaterial one. In *Com.* v. *Bank*, 98 Mass. 12, the case was a bill of interpleader filed by the attorney general of the state, under a special statute, against the savings bank and one Houghton, to determine whether five bonds of the commonwealth had become void as against the commonwealth by reason of the alteration of their numbers. The bonds had been stolen from Houghton, their numbers had been subsequently altered, and afterwards they had been purchased in good faith and for value by the savings bank. The court held that the savings bank acquired good title to the bonds. Discussing the argument that the number of the bonds constitutes a part of the instrument, the court say:

"It is a part of the identity of the paper, but not of the contract, any more than any device, picture, or impression upon it would be. The presence or absence of the number does not change the written contract, in substance or in form, nor affect the proof of it. * * * We think the change of the numbers was not a material alteration of the bonds."

In *City of Elizabeth* v. *Force*, 29 N. J. Eq. 587, the bill was filed by the original owner of certain negotiable bonds, issued by the city of Elizabeth, to recover the money due on two of them, which had been stolen from her, and the number of one of which had been altered before it was presented for payment to the city. The bond was paid by the city, although a bond bearing the same number as that of the altered bond had been previously paid. The court held that the plaintiff could not recover, because the alteration was an immaterial particular. The court said:

"The number of the bond is put upon it as a mark, denoting, for the convenience and protection of the maker, that it is one of a series; but such mark does not enter into or in anywise affect the agreement embodied in it. The purchaser has nothing to do with it, and need give it no heed."

Of course, if the alteration of the bond was an immaterial one, the city was justified in paying it to any one who appeared to be the lawful owner.

Incidentally it was declared in *Birdsall* v. *Russell*, 29 N. Y. 220, that the alteration of the numbers in negotiable bonds was not an alteration

in material particulars. The question, however, in that case, was whether the purchaser received the bonds under such suspicious circumstances as to deprive him of the protection of a *bona fide* purchaser, and the decision turned upon a question of fact. The case of *Suffell* v. *Bank*, *supra*, is relied upon for the plaintiff as an authority against these adjudications. It was there held, by the court of appeal that the alteration of a Bank of England note by erasing the number, and substituting another, was a material alteration, and that a *bona fide* holder for value could not recover against the bank upon the altered note. The decision proceeded mainly upon the consideration that the number upon such a note is an essential part of the note, because it has always been recognized to be so by the public, so that no one would take it if the number were not upon it. That consideration probably would not apply to the case of ordinary corporate bonds.

The decisions of the courts of last resort of Massachusetts and New Jersey ought to prevail as authority here, rather than the decision of the English court of appeal, upon the present question. But the point now involved was presented for adjudication in *Morgan* v. *U. S.*, 113 U. S. 476, 5 Sup. Ct. Rep. 588, and the decision in that case is controlling upon this court. That was an action brought by the purchasers of certain government bonds, in which the government occupied the position of a stakeholder, admitting its liability to pay to the true owners, to determine whether the purchasers or the bank, which was the original owner of the bonds, and from which they had been stolen, were entitled to recover their amount. After the bonds were stolen the serial numbers were altered, and subsequently they were bought by purchasers for value and without notice, and, as is stated by the court in the opinion, there was nothing in the appearance of the altered bonds or the numbers, when purchased, calculated to excite the suspicion or notice of a prudent and careful man; the alterations having been so skillfully effected that they were only discoverable with the aid of a magnifying glass. The bonds were by statute redeemable at the pleasure of the United States, upon call, at any time after the 1st day of July, 1870, and had been duly called when bought by the purchasers. The effect of the alteration of the numbers was not discussed in the opinion of the court, the question considered being whether the bonds were overdue paper after the day when they first became redeemable. The court held that the purchasers acquired a valid title to the bonds, and this conclusion necessarily implied that the alterations were immaterial. As was said by the court of claims in *Brown* v. *U. S.*, 20 Ct. Cl. 416, in reference to that case, the fact of the alteration "necessarily constituted a factor in the decision." Upon the authority of this case alone, it should be held in the present action that the plaintiff cannot recover. But as has been shown, irrespective of this case, the law is that the numbers of bonds like those now in controversy, in which the numbers only serve the collateral purpose of protection and convenience, and do not directly or indirectly enter into the tenor of the contract, are not a material matter. The defendant is entitled to a decree.