CONNECTICUT TRUST & SAFE DEPOSIT COMPANY, APPELLANT, V. E. A. FLETCHER ET AL., APPELLEES.

FILED JANUARY 23, 1901. No. 9,304.

1. **Promissory Note:** INDORSEMENT: PLEDGEE WITHOUT NOTICE. Where a negotiable promissory note is indorsed and transferred before due, as collateral security for a loan of money then made, the pledgee without notice is a holder for value.

2. **Collateral Security:** TRANSFER TO TRUSTEE. Collateral security may be transferred by agreement to a third party as trustee.

3. **Decree of Foreclosure:** SUBSEQUENT SUIT BY HOLDER OF NOTE: BAR. A decree of foreclosure in a suit brought by a mortgagee who had previously transferred the notes secured by the mortgage to a holder for value is not a bar to a subsequent foreclosure proceeding by the holder of such note.

APPEAL from the district court for Franklin county. Heard below before BEALL, J. *Reversed.*

*C. C. Flansburg*, for appellant.

*J. P. A. Black, F. I. Foss, C. E. Budlong* and *E. A. Fletcher, contra.*

NORVAL, C. J.

At all times hereinafter mentioned the Connecticut Trust & Safe Deposit Company and the Loan & Guarantee Company of Connecticut were, and are, corporations with principal offices located at Hartford, in the state of Connecticut. They will be hereinafter referred to as the trust company and loan company, respectively. The business of the loan company was that of loaning money, principally upon the security of western farm mortgages. It carried on a large business in this state. During part of said time Dawes & Foss was a firm of attorneys doing business at Crete in this state, and for a number of years said firm, and after its dissolution, in 1890, through said Foss, negotiated the loans made by said loan company in this state. The firm of Dawes & Foss, and afterwards Foss, collected the interest as it became due upon said loans, remitting same to the said loan company, in many instances also collected the principal and remitting it in the same way, transmitting to the mortgagors the interest coupons, or the notes and mortgages, which it received from the loan company after the payments were received by the company. The firm and Foss also acted as attorneys for the loan company in foreclosing a large number of such mortgages, probably two hundred, and acted very generally as the agents and attorneys of said company in this state. In 1886 said loan company negotiated a loan, through said Dawes & Foss, to one E. A. Fletcher of Franklin county, in the sum of $1,400, taking the note of said Fletcher and his wife for said amount, due April 1, 1891, with interest coupons due semi-annually after date, which loan was secured by a mortgage on real estate situate in said Franklin county. In January, 1886, an agreement was entered into between said trust company and said loan company, a copy of which follows:

"This agreement, made and entered into this 1st day of January, 1886, by and between the Loan and Guarantee

Company of Connecticut, a corporation organized under the laws of the state of Connecticut and located in the city of Hartford, in said state, and the Connecticut Trust & Safe Deposit Company, a corporation organized under the laws of the state of Connecticut and located in said city of Hartford, witnesseth:

"That whereas the said Loan & Guarantee Company of Connecticut is desirous of issuing and selling its own debentures, and of securing the same by pledge of mortgages of real estate and other evidence of indebtedness, which said debentures are to be issued in series of not less than $25,000.00 each, and all the debentures comprising each series to be made payable at the same date:

"Now, therefore, for the purpose of securing the payment of the principal and interest of such debentures, the said Loan & Guarantee Company of Connecticut agrees to deposit with and transfer to the said Connecticut Trust & Safe Deposit Company notes and bonds, secured by first mortgages of real estate worth at least two and one-half times the amount of any and all of said notes and bonds, to an aggregate amount of at least ten per cent, more than the total amount of each series of debentures issued, to be held in trust by said Trust & Safe Deposit Company for the benefit of the purchasers and holders of said debentures until their maturity and payment in full.

"The character and value of the said mortgage loans deposited as security are not known to the trustee except as appears by the papers accompanying the loans and as certified to by the Loan & Guarantee Company and upon which basis the trustee makes its certificate.

"It is further expressly understood and agreed by and between the parties hereto, that the Loan & Guarantee Company shall be entitled to receive the interest upon the securities held in trust by the said Trust & Safe Deposit Company to secure the debentures of the said Loan & Guarantee Company as long as the interest upon the said debentures shall be properly paid, but no longer;

and in case any of the securities so held in trust shall make default in interest for a period of thirty days, it shall be the duty of the said Loan & Guarantee Company to substitute for the securities in default of other mortgage securities of the same face value. Said Trust Company agrees at any time to deliver to said Loan & Guarantee Company any of the securities held in trust by it to secure any series of said debentures, upon substitution and transfer to it by said Loan & Guarantee Company of other securities of equal or greater face value in the place of any such to be withdrawn.

"And in case default shall be made by said Loan & Guarantee Company in the payment of the interest coupons on any of its own debentures, and such default shall continue for sixty days, or if default shall be made in the payment of the principal of any of its said debentures, then said trustee may at once proceed to collect or sell, in such manner as said trustee may deem to be best, the securities held by it in trust to secure such payment, as rapidly as may be done, and apply the proceeds thereof, after payment of all costs and expenses and a reasonable compensation for services, to the redemption and payment of such interest coupons or debentures as are in default, and to pay over the balance, if any there be, to said Loan & Guarantee Company, or if there be not enough received from such collection or sale to satisfy said debentures, proceed at the option. of said Trust Company to endeavor to collect the balance necessary for the full payment thereof, by due process of law, from said Loan & Guarantee Company.

"It is further agreed that whenever said Loan & Guarantee Company shall produce and surrender to said Trust Company any debentures of any series on which said Trust Company as trustee has placed its certificate, and shall satisfactorily show that the same have been redeemed or withdrawn from sale and cancelled, the said Trust Company will surrender and deliver to said Loan & Guarantee Company of Connecticut an amount of the

securities held in trust proportionate to the amount of debentures surrendered and cancelled.

"And the said Connecticut Trust & Safe Deposit Company agrees to receive and hold in trust said securities as hereinbefore mentioned, applying or surrendering the same only in accordance with the foregoing agreement; and upon all such debentures so issued, for which it holds the securities as aforesaid in trust, to place its certificate that such deposit of securities has been made; and that for such services so rendered it will charge a reasonable compensation, which said Loan & Guarantee Company of Connecticut agrees to pay.

"In witness whereof the parties to this agreement have hereunto caused their names to be subscribed and their seals affixed, the day and year above named, at the city of Hartford.

"THE LOAN & GUARANTEE COMPANY OF CONNECTICUT,

 "By WILLIAM L. MATSON, *President.*   [L. S.]

"CONNECTICUT TRUST & SAFE DEPOSIT COMPANY,

 "By M. H. WHAPLES, *Treasurer.*"   [L. S.]

After the receipt of this Fletcher loan by the loan company, and long before its maturity, it transferred it to said trust company, in pursuance of said agreement, turning over to it the note together with the mortgage, which latter was assigned to said trust company, but the assignment was never by it recorded in Franklin county. The note was indorsed as follows:

"For value received we hereby sell, assign and transfer the within bond, together with all interest in and rights under the mortgage deed securing the same, without recourse.

"THE LOAN & GUARANTEE COMPANY OF CONNECTICUT,

 "By WM. L. MATSON, *President.*"

After the trust company took possession of said note, coupons and mortgages, the interest upon the debentures secured thereby was paid and the trust company cut from the collateral notes in its possession, among which

was Fletcher's note, the due interest coupons and delivered them to the loan company, which forwarded them to Dawes & Foss, or to Foss, after the dissolution of the firm, who forwarded them to Fletcher, the latter having paid the interest to said Dawes & Foss, or to Foss. After the maturity of the note, the same not having been paid, Foss commenced suit in the district court of Franklin county, in the name of the loan company, to foreclose the mortgage. As a matter of fact, Foss did not have possession of the note or mortgage, the same being in the hands of the trust company, and although the suit proceeded to decree, neither the note nor mortgage was offered in evidence, nor were they ever in possession of said Foss. Afterwards, Fletcher and wife conveyed the mortgaged premises to one Furst, who paid into the office of the district clerk of Franklin county a sum sufficient to discharge the amount of the said decree, and the decree was duly discharged of record by the clerk, and a receipt of record was duly entered by said Foss in the name of the guarantee company. In January, 1893, the clerk of the district court executed a formal satisfaction piece, which was duly recorded in the county clerk's office, and later an order was made by the court satisfying and discharging the *lis pendens* which had been filed in the cause. The trust company retained in its possession said note and mortgage until November, 1895, when suit was instituted in its name in Franklin county to foreclose the mortgage. Furst was a defendant, and set out the facts of the former foreclosure by the guarantee company, and the payment and discharge of the decree as hereinbefore recited, and claimed that the action of Foss and the loan company in the matter was binding on the trust company. Upon the issues made the case went to trial, and the court entered a decree in favor of the defendant Furst and against said trust company, which appeals to this court.

Upon evidence almost identical with that offered in this case, so far as the relations of Foss with the loan

company are concerned, we have held that Foss was undoubtedly the agent of said company to collect the principal of loans as they matured (*Root v. Fast*, 58 Nebr., 498); and we have no doubt of the correctness of that holding. Were the evidence relative to the transfer of the note and mortgage to the trust company similar to that in the case cited, we should not hesitate to affirm the decree of the lower court, and would do so any how if our sympathies for the defendant who paid his money in good faith, believing that he was canceling the mortgage in question, were to control our decision. But the evidence is of such character as to constrain us to hold that the court below erred in finding that either the loan company or Foss was the agent of the trust company, to collect the principal sum due on the loan or that any act of the trust company would justify the defendant ·in relying on Foss's authority to act as either agent or attorney. The contract between the loan company and the trust company, quoted above, made the trust company the holder for this mortgage and note in trust as security for the payment of the debenture bonds of the loan company. The note and mortgage being held in pledge, that fact entitled the holder, the trust company, to all rights and privileges of a holder for value before maturity. *Koehler v. Dodge*, 31 Nebr., 328. It is also doubtless true that a transfer of collateral security may be made to a third party as trustee by agreement. *City Bank v. Perkins*, 29 N. Y., 554. But it is claimed by defendant that because the agreement between the two companies obligated the loan company, if the note and mortgage were not paid at maturity, to take them up and substitute others in their place, the transfer was conditional, and for that reason it could not be considered a holder for value. We can not so conclude from that fact. The condition was not complied with, and the trust company was entitled to hold the papers, and to proceed to collect the debt from the mortgagor, exactly as it would have been entitled to collect any note held as collateral se-

curity, if the loan secured by them was not paid. Hence we can not reach the conclusion that the condition was such as to make the trust company any less a holder for value than would be the holder of any paper held as collateral security. The evidence fails to show any act or agreement on the part of the trust company from which a legal conclusion can be reached, that either the loan company or Foss was its agent to collect the principal of this note. The prior foreclosure was not a bar to this suit. *Todd v. Cremer*, 36 Nebr., 430.

The decree of the lower court must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.