ELMER B. STEPHENSON, TRUSTEE, APPELLANT, V. GLENN PERRY ET AL., APPELLEES.

FILED JUNE 24, 1924. NO. 22782.

1. **Bills and Notes:** HOLDER FOR VALUE. "Where a negotiable promissory note is indorsed and transferred before due, as collateral security for a loan of money then made, the pledgee without notice is a holder for value." *Connecticut Trust & Safe Deposit Co. v. Fletcher*, 61 Neb. 166.

2. ———: FRAUD: BURDEN OF PROOF. Where fraud in the inception of a note is pleaded as a defense, and proof has been offered sufficient to make out a *prima facie* case, in an action by an indorsee against the maker the burden is on the plaintiff to show he is a *bona fide* holder.

3. ———: ———: ———. Where an action is brought upon a promissory note by an agent for the benefit of other parties, and where in said action the defendant has offered proof sufficient to make out a *prima facie* case of fraud in the inception of the note, the burden is on the plaintiff to show that all of the parties for whose benefit the action is brought had no knowledge of the fraud.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Fred C. Foster, O. K. Perrin* and *S. M. Kier,* for appellant.

*William A. Robertson* and *Tyrrell & Westover, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and GOOD, JJ..

Day, J.

This action was brought in the name of Elmer B. Stephenson, trustee, upon a promissory note against Glenn Perry, maker of the note, and the Standard Securities Corporation, payee and indorser, defendants. The last named defendent made no appearance, and judgment was rendered against it for the full amount due upon the note. Upon the issues joined between the plaintiff and Perry, who will be hereinafter referred to as defendant, there was a verdict and judgment for the defendant. Plaintiff appeals.

The petition, in the main, is in the usual form in actions of this character. The plaintiff alleged that he brought the action as trustee of an express trust on behalf of 14 persons, whose names are attached to an exhibit which is made a part of the petition. The defendant pleaded fraud in the inception of the note; failure of consideration; and also that the plaintiff was not a holder in good faith in the usual course of business.

At this point it may not be amiss to set out some of the salient facts pertaining to this transaction. It appears that the Standard Securities Corporation was engaged, among other things, in selling stock in corporations. The Patriot Motors Company was an industrial corporation, operating an extensive plant at Havelock near the city of Lincoln. The president of the Standard Securities Corporation was vice-president of the Patriot Motors Company. The former corporation was selling stock of the latter corporation as its agent. On June 4, 1920, the Standard Securities Corporation sold to the defendant ten shares of stock in the Patriot Motors Company, and in payment therefor took the defendant's note for $1,000 due in six months after date, and drawing interest at 7 per cent. from date until paid. This note forms the basis of the present action. A short while thereafter the note was indorsed by the Standard Securities Corporation and turned over to the Patriot Motors Company. The president of the latter company testified that the note was given for stock in the Patriot Motors Company. The shares of stock were never delivered to the defendant. Some suggestion is made in the testimony

that the shares of stock were being held as security for the note. There is ample testimony in the record to sustain the claim of the defendant that the note was obtained by fraud. It is also clear that the Patriot Motors Company was chargeable with knowledge of the fraud in the procuring of the note. The record shows that it had been the custom of the Patriot Motors Company to discount its commercial paper at the banks in Lincoln for the purpose of securing ready money to conduct its business. For some time prior to August 1, 1920, the Patriot Motors Company had been unable to secure discounts at the banks, and it became very much in need of ready money to carry on its operations. Its business affairs became the subject of considerable comment. The Chamber of Commerce of Lincoln had considered the subject with a view of working out some scheme to financially assist the company. Finally the fourteen business men for whose benefit this action is brought agreed to loan to the Patriot Motors Company $38,000 on condition that the company would give satisfactory collateral security. This sum was contributed in unequal amounts, the lowest amount contributed by any one person being $1,000 and the highest $10,000. For the purpose of convenience the fourteen men selected the plaintiff to look after the details of the loan and the securities. The plaintiff examined the plant, and to some extent went over the affairs of the company. On August 3, 1920, the Patriot Motors Company turned over to the plaintiff as collateral security for the money to be advanced certain securities aggregating in face value $50,444.80. Among the notes turned over to the plaintiff was the note in question. Shortly thereafter the plaintiff paid to the Patriot Motors Company sums of money aggregating $39,398.40. There is nothing in the record to show that the Patriot Motors Company executed any note to the plaintiff evidencing this indebtedness. The record shows that the plaintiff received from the business men $38,000. No explanation is made how he came to advance a larger sum than he had received. The evidence refers to the plaintiff as "trustee." Whether he was a "trustee" within the usual meaning of that term

we think may well be doubted. From the evidence it may well be inferred that he was merely an agent for the parties in looking after the details of the business.

The important question presented by the record is whether the plaintiff was a *bona fide* holder of the note for value in the usual course of business. The note was indorsed by the Patriot Motors Company; upon its face it was a negotiable instrument; and at the time it was turned over to the plaintiff it was not due. The rule is settled that "Where a negotiable promissory note is indorsed and transferred before due, as collateral security for a loan of money then made, the pledgee without notice is a holder for value." *Connecticut Trust & Safe Deposit Co. v. Fletcher,* 61 Neb. 166.

Upon the trial the defendant introduced testimony tending to prove that there was fraud in the inception of the note. It was incumbent upon the plaintiff, therefore, in making out his case to show that he was a *bona fide* holder. The rule is well settled that where fraud in the inception of a note is pleaded as a defense, and proof has been offered sufficient to make out a *prima facie* case, in an action by an indorsee against the maker the burden is on the plaintiff to show that he is a *bona fide* holder. *Central Nat. Bank v. Ericson,* 92 Neb. 396; *Ostenberg v. Kavka,* 95 Neb. 314; *Auld v. Walker,* 107 Neb. 676.

Our statute provides, as follows: "Every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." Comp. St. 1922, sec. 4670. The statute also provides: "A holder in due course is a holder who has taken the instrument under the following conditions: First. That it is complete and regular on its face. Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. Third. That he took it in good faith and for value. Fourth. That at the time it was negotiated to him he had no notice of any in-

firmity in the instrument or defect in the title of the person negotiating it." Comp. St. 1922, sec. 4663.

Did the plaintiff's proof show that at the time he took the note he had no notice of infirmities existing against it? The plaintiff testified that he had no knowledge of the circumstances of the making of the note or the consideration therefor. He also called one of the fourteen men, who testified that he had no knowledge of any infirmities against the note. It is clear from the plaintiff's petition that he was demanding a single judgment for the amount of the note in favor of himself as trustee, but for the benefit of all the persons for whom he assumes to act, either as trustee or agent. To do this it was incumbent upon him to show that all of the persons for whom he assumed to act were without notice of fraud in the inception of the note. This, he did not do. Authorities are not wanting to support the rule that the party holding the legal title to a note or instrument may sue on it, though he be an agent or trustee and liable to account to others for the proceeds of the recovery, but in such case any defenses which exist against the party beneficially interested may be interposed. *Cottle v. Cole & Cole,* 20 Ia. 481. It would seem to logically follow that where fraud in the inception of the note was pleaded, under the practice in this state in an action brought by an agent for the benefit of another, it should be shown that the party beneficially interested did not know of the infirmities against the note.

The plaintiff complains of the giving of instruction No. 4 by the court. In substance this instruction told the jury that the burden of proof was on the plaintiff to satisfy them that he received the note in question without notice or knowledge of any fraud upon the defendant in the procuring of the note, and that the same is true of at least one of the parties whom he represented. The plaintiff now argues that this instruction imposed upon him a greater burden than the law requires. Under the plaintiff's theory of the case as disclosed by his petition, and the facts proved, we are of the view that the instruction was too restrictive, and that it should have required the plaintiff to show that

all of the parties for whose benefit the action was brought had no notice of the fraud in the inception of the note. The plaintiff cannot complain of this error. Under the record a peremptory instruction should have been given for the defendant because the plaintiff had failed to show that all of the parties interested had no notice of fraud in the inception of the note.

Complaint is made as to the giving of other instructions, but, fairly construed, we think there was no error in giving them.

In this discussion we have omitted any reference as to whether the facts as shown by the record were sufficient to submit to the jury the question of plaintiff's knowledge of fraud in the inception of the note.

From an examination of the entire record, we find no prejudicial error, and the judgment is, therefore,

AFFIRMED.

Note—See Bills and Notes, 8 C. J. p. 487, sec. 702; p. 984, sec. 1292.