STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. NEBRASKA STATE SAVINGS BANK OF WAHOO: JOHN D. GORANSON, INTERVENER, APPELLANT: MINNIE M. JANSA, EXECUTRIX, INTERVENER, APPELLEE.

FILED JUNE 1, 1934. No. 28920.

*J. H. Barry,* for appellant.

*Schiefelbein & Donato, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

EBERLY, J.

It may be said that prior to May 10, 1930, the Nebraska State Savings Bank, hereinafter referred to, and the Saunders County National Bank were engaged in banking business at Wahoo, Nebraska. These institutions occupied the same banking rooms and the same persons were the executive officers of each. Both banks became insolvent and closed their doors on the same day. On the date above mentioned, in a proceeding in the district court for Saunders county, because of insolvency, a receiver was duly appointed, who thereupon qualified and took over the business and property of the Nebraska State Savings Bank. On March 17, 1931, Minnie M. Jansa, as executrix of the estate of Anton Jansa, filed in this receivership proceeding her petition of intervention. In this pleading she alleged in substance that her decedent, Anton Jansa, had in his lifetime, on July 7, 1928, "for a good and valuable consideration, in due course of business and before maturity, purchased" a certain real estate bond and note payable to the Nebraska State Savings Bank, identified as MN-853, in the sum of $3,000, dated February 1, 1926, together with interest coupons

numbered 5 and 6 of even date, in the sum of $150 each, together with a half interest or share in a certain real estate mortgage securing the same, dated February 1, 1926, due November 1, 1931, duly recorded in the office of the register of deeds of Saunders county in book 43 at page 621 of the mortgage records of that county, which instrument last referred to described and mortgaged to the Nebraska State Savings Bank the east half of the southeast quarter of section 34, township 14 north, range 5 east of the 6th P. M.; that both the real estate bond and the mortgage were duly executed by Wilhelmina Hruby, a widow, and that Anton Jansa paid $3,060.54 therefor. This intervener further alleged that the Nebraska State Savings Bank had theretofore failed to execute a proper assignment of mortgage, and further alleged that intervener is now the owner and in possession of the above described mortgage note and bond, and prayed that the receiver of the Nebraska State Savings Bank be directed to execute a proper assignment of mortgage to petitioner, and for general equitable relief.

On June 2, 1931, John D. Goranson also filed in said receivership proceeding his petition in intervention and answer to the petition of Minnie M. Jansa. This pleading sets forth at length the execution and delivery to the Nebraska State Savings Bank by Wilhelmina Hruby of two certain real estate mortgage coupon bonds numbered, respectively, MN-853 and MN-853-1, each being in the sum of $3,000, bearing date of February 1, 1926, and both being secured by one real estate mortgage, also executed by Mrs. Hruby, covering the east half of the southeast quarter of section 34, township 14 north, range 5 east of the 6th P. M., in Saunders county, which mortgage was duly recorded; that on April 12, 1926, the Nebraska State Savings Bank of Wahoo, Nebraska, sold, assigned and delivered to this intervener one of the original real estate mortgage bonds above described, together with interest coupons thereto attached, all duly indorsed in blank, said original bond being numbered MN-853, for which this

intervener then and there paid the Nebraska State Savings Bank the sum of $3,000 with accrued interest, from which date this intervener has been the owner of said mortgage coupon bond and the coupons attached. This intervener sets forth in his pleading a copy of a certificate in writing of the purchase of bond of $3,000 by him, executed by the officers of the Saunders County National Bank, and further alleges that such bond and coupons attached thereto were deposited by him at the time of purchase thereof with the Nebraska State Savings Bank, and that this intervener has never parted with his right, title and interest and ownership thereof; denies each and every allegation in the petition in intervention filed by Minnie M. Jansa, executrix; prays that he may be determined to be the owner of real estate bond MN-853, that Minnie M. Jansa, as executrix, may be required to deliver said bond to him, that the receiver of the Nebraska State Savings Bank may be required to deliver to him a suitable assignment of mortgage, and for general equitable relief.

To these pleadings the receiver filed an answer setting forth that there were five claimants for the four bonds designated in the record as MN-853, MN-853-1, MN-854, MN-854-1, of $3,000 each, all of said bonds being executed by Wilhelmina Hruby, secured by mortgage on land in Saunders county, Nebraska; that the receiver claims no interest in any of these bonds, and asks that claimants be required to fully establish ownership and possession of said mortgage bonds to the satisfaction of the court.

The cause was heard by the district court as an equitable proceeding, and the result was a finding and judgment for Minnie M. Jansa, as executrix of the estate of Anton Jansa, determining that she was the owner of real estate bond designated as MN-853 and entitled to receive the assignment of mortgage prayed. From the order of the district court overruling his motion for a new trial, John D. Goranson prosecutes this appeal.

The controlling question for determination on this hearing *de novo* is the ownership at the present time of real estate bond MN-853.

The evidence of Minnie M. Jansa is that after the death of her father, upon her appointment and qualification as executrix of his estate, after January 1, 1930, and before the closing of the Nebraska State Savings Bank, she called at that institution and made demand for her father's papers; that such papers were then turned over to her; that among the papers turned over to her was exhibit A, which is a negotiable instrument designated on its face as "coupon bond," dated February 1, 1926, due November 1, 1931, for the sum of $3,000, signed by Wilhelmina Hruby and payable to the Nebraska State Savings Bank of Wahoo, Nebraska. It is numbered MN-853, and is indorsed: "For value received ———— hereby assign and transfer the within note together with all my right, title and interest in and to the mortgage deed securing the same to ———————— without recourse. ————19————. (Signed) The Nebraska State Savings Bank of Wahoo, Nebraska, F. J. Kirchman, President." On the back of this instrument appears the notation: "Secured by mortgage on * * * E½, SE¼-34-14-5. Due November 1, 1931." There is also introduced in evidence a debit slip for $3,000 on which appears the words, "Wilhelmina Hruby mortgage bond. July 7, 1928." A ledger sheet was introduced showing "A. Jansa" checking account with the Saunders County National Bank. This discloses that some time between April 7, 1928, and April 19, 1929, $3,000 was withdrawn from his account. So far as disclosed by the record no other payment was made by Anton Jansa for this bond.

Testifying from the loan register of the savings bank we have F. J. Kirchman stating that, from the loan register in which the entries thereof were identified as made either by himself or under his direction, coupon bond MN-854-1 for $3,000 was also executed by Mrs. Hruby; that this bond (MN-854-1) was originally owned by and

made payable to the Nebraska State Savings Bank; that it was sold to Colon on March 29, 1926, then bought back from Colon a few days later by the Saunders County National Bank; that on July 12, 1926, it was sold to the Bank of Yutan; that on January 3, 1927, it was sold to the Farmers & Merchants Bank of Prague; that on March 7, 1928, it was taken back from the Farmers & Merchants Bank of Prague by the Saunders County National Bank; that on July 7, 1928, it was charged to Anton Jansa. "It was sold to him, that's what I mean, we always charge the account and sell it to him. Then later on there is a lead-pencil memorandum, Olander Freeman, Oct. 31, 1929."

Further, witness F. J. Kirchman testifies: "The Court: Where is this bond 854-1? Mr. Barry: That's the one that Freeman has now. The Court: How do you explain the situation that it was charged to two people? A. Well, as I recall it now, when Miss Jansa came in for these papers, why we gave, we took, it may have been then, or some time previous to that, I don't recall now, but anyhow we took out the Goranson bond. Q. In other words, what you did when Miss Jansa came in after these papers, you took the Goranson bond out and gave it to her? A. That's the fact. Q. That's the real situation? A. Yes, sir. Q. And the bond that Jansa had really purchased you put in the Freeman package, is that it? A. Yes, sir; that's it. Q. And that explains why there is an extra purchaser here for only four bonds? A. That's the idea exactly. * * * Q. As I understand it, you did actually hand this bond to Miss Jansa, as the Jansa bond? A. That's it. Q. And you gave her to understand at that time that— A. Was her bond; yes, sir. Q. The one that her father had purchased? A. Yes, sir. Q. Although, in fact, it was purloined from another package? A. I don't recall now, Judge, whether I gave it to her, or whether I put it in her father's envelope. Q. And then gave the envelope to her? A. Yes, sir."

Later this bond (MN-854-1) was bought by the State Bank of Swedeburg and by that bank sold to Olander Freeman on November 5, 1929, and a check of that amount charged to his checking account in the State Bank of Swedeburg.

Mr. Kirchman also testified as follows: "Q. Now, then, Frank, going back to the bond MN-853, will you kindly give the court the history of that bond? * * * A. The bond was originally owned by the Nebraska State Savings Bank on February 4, 1926, and sold to the Farmers & Merchants Bank of Prague on March 29, 1926, and resold to the Saunders County National Bank of Wahoo on March 31, 1926, and that bank sold one of the bonds of $3,000 on April 12, 1926, to John D. Goranson. Q. Which one of the bonds? * * * A. That was MN-853. Q. Is there any further record of that bond being sold or disposed of? A. That's the last record on the loan register here."

The facts in the record clearly sustain the conclusion that coupon bond MN-853 (a negotiable instrument) was on April 12, 1926, sold by the then owner thereof to John D. Goranson, and delivered at the time of such sale duly indorsed in blank. The purchase price was fully paid by a charge of the amount thereof, $3,028.75, to his checking account in the Saunders County National Bank on the date of the transaction. At the conclusion of the purchase it appears that this bond thus indorsed was left for safe-keeping in the wallet or file of the purchaser which was placed for that purpose in the possession of this bank. In October, 1929, MN-854-1 was surreptitiously withdrawn by the officers of the Saunders County National Bank and sold to the State Bank of Swedeburg. In January or February, 1930, when demand was made by the executrix for her father's papers, F. J. Kirchman, then the managing officer of both the Nebraska State Savings Bank and the Saunders County National Bank, without authority, surreptitiously withdrew from the envelope of John D. Goranson coupon bond MN-853 for

$3,000, with interest coupons attached, and delivered it to the executrix of the estate of Anton Jansa, and at the same time, either expressly or by implication, assured her that this bond was in fact the bond her father had purchased and was his property.

It is also fairly established by a preponderance of the evidence that on July 7, 1928, Anton Jansa purchased from Kirchman, the officer in charge of the Saunders County National Bank, the coupon bond MN-854-1 for $3,000 (a negotiable instrument) for the face, paying therefor in cash. This bond indorsed in blank was likewise deposited with the papers of the purchaser and retained by this bank for safe-keeping. This instrument, as we have seen, was, in effect, stolen by Kirchman and removed from the "file" belonging to Anton Jansa, sold, and the proceeds converted to the use of persons other than Jansa.

Both Goranson and Jansa, in his lifetime, acted in good faith. If negligence should be charged to either, both are equally guilty.

As related to personal property generally, the rule is: "Generally, no one can be divested of his property *in invitum*, where there is not clear warrant of law therefor; and a third person cannot transfer title to property without the knowledge or consent of the owner. Ordinarily the owner of personal property cannot be divested of title without his consent; he can only part with his title by voluntary act or by conduct creating an estoppel. Further, a tortious conversion of personal property does not deprive the true owner of his title; after a conversion of property, title remains in the owner until in some way he receives satisfaction for it. The possession of a property right acquired secretly or by false assertions or unknowingly surrendered by the owner does not deprive him of ownership. Title to personal property fraudulently or feloniously obtained does not pass to a wrong-doer, where the wrongful act is a crime at common law, and where property has been obtained from the owner by such act,

his unqualified ownership is not changed, and he may peaceably take it in whose hands he may find it; * * * as the case may be. A purchaser of a chattel or of a chose in action acquires only such title as the seller had." 50 C. J. 784. So, too, a thief can acquire no title to stolen property. *Lightfoot v. Davis*, 198 N. Y. 261. And, likewise, title to personal property cannot be acquired through theft or robbery. *Carden v. Swagger*, 158 Ark. 640.

As to negotiable instruments, the rule above stated is modified, and by an overwhelming weight of authority is established to be that "Bonds having a legal inception and payable to bearer or blank as to the payee, or payable to order and indorsed in blank, are negotiable paper, and the courts are agreed that the purchaser of such bonds, although they have been stolen, acquires a good title thereto as against the true owner, providing he purchased in good faith and for a valuable consideration." 1 A. L. R. 717, note. See, also, *Morgan v. United States*, 113 U. S. 476; *Hotchkiss v. National Banks*, 21 Wall. (U. S.) 354; *Murray v. Lardner*, 2 Wall. (U. S.) 110; *Wylie v. Missouri P. R. Co.*, 41 Fed. 623; *Gilbough v. Norfolk & P. R. Co.*, 10 Fed. Cas. 354; *Parsons v. Utica Cement Mfg. Co.*, 82 Conn. 333; *Rockville Nat. Bank v. Citizens Gas Light Co.*, 72 Conn. 576; *Garvin v. Wiswell*, 83 Ill. 215; *Jones v. Nellis*, 41 Ill. 482; *Greenwell v. Haydon*, 78 Ky. 332; *Consolidated Ass'n of Planters v. Avegno*, 28 La. Ann. 552; *Pratt v. Higginson*, 230 Mass. 256, 1 A. L. R. 714; *Spooner v. Holmes*, 102 Mass. 503; *Commonwealth v. Emigrant Industrial Savings Bank*, 98 Mass. 12; *City of Adrian v. Whitney Central Nat. Bank*, 180 Mich. 171; *New Orleans J. & G. N. R. Co. v. Mississippi College*, 47 Miss. 560; *Boyd v. Kennedy*, 38 N. J. Law, 146; *City of Elizabeth v. Force*, 29 N. J. Eq. 587; *Hibbs v. Brown*, 190 N. Y. 167; *Varick v. Second Nat. Bank*, 47 Hun. (N. Y.) 639; *Manhattan Savings Institution v. New York Nat. Exchange Bank*, 170 N. Y. 58; *Dutchess County Mutual Ins. Co. v. Hachfield*, 73 N. Y. 226; *Newton v.*

*Porter,* 69 N. Y. 133; *Evertson v. National Bank of Newport,* 66 N. Y. 14; *Seybel v. National Currency Bank,* 54 N. Y. 288; *Welch v. Sage,* 47 N. Y. 143; *Birdsall v. Russell,* 29 N. Y. 220; *Interboro Brewing Co. v. Doyle,* 151 N. Y. Supp. 325; *Cochran v. Fox Chase Bank,* 209 Pa. St. 34; *Mason v. Frick,* 105 Pa. St. 162; *Carpenter v. Rommel,* 5 Phila. (Pa.) 34; *Memphis Bethel v. Bank,* 101 Tenn. 130; *Whiteside v. First Nat. Bank,* 47 S. W. (Tenn.) 1108; *Texas Banking & Ins. Co. v. Turnley,* 61 Tex. 365; *Edelstein v. Schuler & Co.* (1902) 2 K. B. (Eng.) 144; *London Joint-Stock Bank v. Simmons* (1892) 61 L. J. Ch. n. s. (Eng.) 723; *Bechuanaland Exploration Co. v. London Trading Bank* (1898) 2 Q. B. (Eng.) 658.

In the instant case coupon bond MN-853 was originally purchased by and delivered to Goranson. He kept it with his papers in the bank, and never authorized its removal or transfer. He was deprived of its possession by a thief whose acts in connection with the taking amounted to a theft. Considered as personal property, and governed by the general rule, the present possessor secured no rights in the property she now holds against the true owner. To bring the present holder within the exception applicable to negotiable instruments, and thus validate her title thereto, it is essential that she establish that her decedent in his lifetime purchased bond MN-853 in good faith and for a valuable consideration, or that he received title from a "holder in due course." Comp. St. 1929, secs. 62-402, 62-409; *Stephenson v. Perry,* 112 Neb. 294; *Taylor v. Swanson,* 112 Neb. 403; *Howells State Bank v. Hekrdle,* 113 Neb. 561; *Bank of Commerce & Savings v. Randell,* 107 Neb. 332; *Riverton State Bank v. Walker,* 107 Neb. 672; *Hattrem v. Burdick,* 138 Or. 660.

This the executrix has failed to do. She received the property here in suit (MN-853) from her father's agent or bailee in good faith, it is true. But, her father's agent, without authority, had substituted property her father never owned. Kirchman possessed no title or right in and to coupon bond MN-853, either in his own right or as a

representative of the true owner, that could be transferred by him to the executrix. She parted with nothing of value when the substituted property was received by her, and necessarily it was therefore so received subject to the true owner's rights. She is then not a holder in due course, and Goranson in this proceeding is entitled to recover bond MN-853, together with coupons attached thereto.

We have carefully considered the case of *London and County Banking Co. v. London and River Plate Bank* (1888) 21 Q. B. D. (Eng.) 535, cited by appellee, but deem the doctrine therein announced not in harmony with the trend of the American decisions relating to this subject. However, in the case of *Nash v. De Freville* (1900) 2 Q. B. D. (Eng.) 72, a decision was announced which we epitomize as follows:

"The defendant gave three promissory notes to cover his indebtedness to the payee, and subsequently two more notes, in substitution for the first three and to cover future advances. All the notes were payable on demand and were given with the understanding that they should not be negotiated. The payee indorsed all five notes generally to the plaintiffs. After the payee had so negotiated the notes the defendant paid to him the amount due on the last two notes, but the defendant was not aware that the payee had parted with the notes, and did not ask for or receive any of them from him. At a later date the payee obtained the five notes from the plaintiffs by fraud, and handed them to the defendant. In an action by the plaintiffs on the notes: *Held*, that the defendant, when he received back the notes, did not become holder for value, since the previous satisfaction of the notes by him was not a consideration given by him when he received back the notes, and that as they were then overdue he acquired no better title than the payee had while they were in his hands, and that the plaintiffs, being entitled to disaffirm the transaction between themselves and the payee, by which the latter obtained possession of the notes, could recover in the action."

It would seem that in the instant case, in view of the foregoing doctrine, the previous payment in 1928 by Anton Jansa, in a transaction then wholly closed, of the purchase price for coupon bond MN-854-1 was not consideration given by his executrix when she received in substitution therefor coupon bond MN-853 in 1930 without knowledge or participation therein of its true owner.

It necessarily follows that Goranson has never been divested of his title to and property in coupon bond MN-853, for $3,000, and coupons thereto attached, and is now the owner and entitled to the return thereof from Minnie M. Jansa as executrix of the estate of Anton Jansa, deceased, and is also entitled to an assignment in part of the real estate mortgage securing the same from the receiver of the Nebraska State Savings Bank.

It follows that the district court erred in its decree in this case awarding coupon bond MN-853, with coupons attached, to the appellee. Therefore, the judgment of the trial court is reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.