SECURITIES CREDIT CORPORATION, A CORPORATION,
APPELLANT, V. I. L. PINDELL, APPELLEE.

44 N. W. 2d 501

Filed November 3, 1950.     No. 32804.

*P. J. Heaton* and *Harold E. Connors,* for appellant.

*Martin & Davis,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The Securities Credit Corporation brought this action
at law in the district court for Cheyenne County against
I. L. Pindell, the county clerk of said county, to recover

damages, charging negligence on the part of the defendant in failing to perform the duties of his office by not noting the lien of the plaintiff upon the certificate of title of a motor vehicle. The parties, by stipulation, waived trial to a jury and agreed that the case be submitted to the court. The trial court found generally in favor of the defendant and against the plaintiff; specifically found that the defendant was not guilty of malfeasance either in the issuance of the certificate of title to the purchaser of the automobile or in the recording and noting of the mortgage lien held by the Platte Valley Finance Company without first recording and noting the mortgage lien of the plaintiff upon the certificate of title; further found that the evidence did not sustain the allegations of the plaintiff's petition; and adjudged and decreed that the plaintiff's petition be dismissed with prejudice. Upon the overruling of the plaintiff's motion for a new trial, the plaintiff perfected its appeal to this court.

The parties stipulated to most of the material evidence in the record. The rest of it is not in much dispute.

For convenience the parties will be referred to as originally designated in the district court.

It appears from the record that on August 5, 1948, one Ray E. Walker, hereinafter referred to as Walker, purchased a Plymouth club coupe from the Paul Long Motors Company, Sterling, Colorado. On the same day Walker executed a note and chattel mortgage to the Paul Long Motors Company in the amount of $1,958.16, which constituted a lien upon the automobile purchased from it. On the same day this note and mortgage were assigned by the Paul Long Motors Company to the plaintiff, Securities Credit Corporation. The dealer issued a bill of sale to Walker. This bill of sale does not show the existence of any lien on the automobile. On August 11, 1948, the plaintiff mailed a letter to the defendant enclosing the note and mortgage and a check in the amount of sixty-five cents to cover the filing

fees, and requesting that the defendant note the lien on the certificate of title when Walker came into the county clerk's office for his new title. On Saturday evening, August 14, 1948, Walker contacted the defendant at his apartment with reference to procuring a certificate of title to the automobile. Walker presented to the defendant the bill of sale upon which no liens were noted. The clerk then filled out an application for a certificate of title which was signed and sworn to by Walker. This instrument did not show that there was a lien on the automobile. Thereafter Walker accompanied the defendant to the county clerk's office where a certificate of title to the motor vehicle was issued by the defendant to him. The lien of the plaintiff was not noted on the certificate of title.

The defendant testified that Walker presented to him a clear bill of sale, and in the application for the certificate of title he took the affidavit of Walker that the motor vehicle was clear of all mortgages. The defendant gave further testimony to the effect that prior to the time the Certificate of Title Act became the law chattel mortgages on automobiles were filed with other chattel mortgages and a record of all chattel mortgages was kept. When a transfer of an automobile was made the chattel mortgage records were searched to ascertain the encumbrance against such automobile, if any. After the act became effective and the county clerks were required by law to issue certificates of title to automobiles, it was required that the mortgage be presented with the application for a certificate of title, and it was noted on the certificate of title. There were no other records of the chattel mortgages on automobiles kept. The previous practice had been superseded.

The parties stipulated that Sterling, Colorado, is approximately 50 miles distant from Sidney, Nebraska, and that there is overnight mail service between the two cities.

The defendant did not know whether he had the

plaintiff's mortgage in his possession at the time he issued the certificate of title to Walker, or whether it had ever been in the office prior to the issuing of the certificate of title. He made no search for it. He did not know whether or not the plaintiff requested him to issue the certificate of title to Walker prior to the time it was issued.

A deputy county clerk testified that it was her duty to make deposits, and that the sixty-five-cent check for filing fees which accompanied the mortgage and note sent by the plaintiff to the defendant was deposited by her. It appears that this check was paid by the bank in Sterling, Colorado, on August 18, 1948, so it must have been deposited prior to that date. She testified further that in her official capacity she noted mortgage liens upon the certificates of title to automobiles.

On September 7, 1948, Walker executed another mortgage on this automobile to the Platte Valley Finance Company of Sidney. This mortgage lien appears as a first lien upon the certificate of title to the automobile.

There is evidence of the deputy clerk to the effect that representatives of the plaintiff, having previously obtained the certificate of title issued to Walker from the Platte Valley Finance Company, presented the mortgage together with the certificate of title, and she recorded the plaintiff's mortgage on the certificate of title as a second lien, on February 17, 1949. She recalled that the original mortgage of the plaintiff was in the county clerk's office at one time. She did not know how long it remained there. When the files were cleaned out, it was mailed back to the plaintiff.

On November 5, 1948, the plaintiff sent a letter to the defendant, calling his attention to the fact that on August 11, 1948, the plaintiff mailed him the original mortgage which was executed by Walker on the date the automobile was purchased, and that plaintiff requested that the lien be recorded and the mortgage returned; that plaintiff had not received the title and mortgage;

and wondered if Walker had ever brought the certificate of title to the clerk's office; and if not, to let the plaintiff know by return mail so it would have an opportunity to contact Walker and have the papers properly recorded. The reply of the defendant appeared on the same letterhead, to the effect that his office was holding the mortgage in the name of Walker, and he had not yet brought in his title so that the mortgage could be recorded on the certificate of title.

A witness for the plaintiff testified that as a representative of it he procured the title from the Platte Valley Finance Company, made an investigation of the matter, and found that the Platte Valley Finance Company had a mortgage on the automobile; that Walker had taken the automobile to Orosi, California, and there it was found in about three weeks. Walker was not located. The automobile was sold by proper legal proceedings, and the plaintiff paid the amount due the Platte Valley Finance Company on its mortgage. The damage the plaintiff claimed was the amount the plaintiff had to pay the Platte Valley Finance Company to get a release of its mortgage.

The plaintiff contends that the judgment rendered by the trial court is contrary to law, and is not sustained by sufficient evidence.

The parties are in agreement that the following questions are presented under the assignment of errors: (1) Is a county clerk liable to the owner of a chattel mortgage lien for failure to note such lien upon the title to a motor vehicle, when such lien is in his possession at the time he issues a new certificate of title? (2) Is a county clerk liable to the owner of a chattel mortgage lien on a motor vehicle for failure to make a diligent search of his records to ascertain whether or not he has in his possession such lien and a request for it to be noted upon a certificate of title of a motor vehicle at the time he accepted the application for a new certificate of title? (3) Is a county clerk liable for damages sustained by reason of his failure

to note a lien upon the certificate of title to a motor vehicle 'in the absence of malfeasance or fraudulent practice?

The Certificate of Title Act was enacted by the Legislature in 1939. We will refer to it as the act. This court has not directly passed upon the purpose of the act or the intendment of the Legislature in enacting it. We believe the following authorities exemplify the purpose of the act and intendment of the Legislature in such respect.

The act as a whole indicates conclusively that the Legislature believed the chattel mortgage registration laws theretofore existing, insofar as they affected motor vehicles, were inadequate for the protection of lienholders and innocent purchasers for value. This, for the reason if, under the registration act, a mortgagee filed his mortgage in the office of the county clerk of the county where the property is situated, and in some cases where the mortgagor resided, it became constructive notice to every person. It may be assumed that the Legislature was cognizant of the fact that mortgagors of automobiles frequently changed the county of their residence and that under existing laws the mortgage may not be registered at a given time in the county of the new residence. A purchaser would as well accept the word of the seller of a car that there was no lien on it, as to accept his word as to the county of his residence, under the circumstances related. It would perhaps be unpracticable to require a prospective purchaser to make a search of the records in numerous counties to ascertain if the car was encumbered. To remedy the shortcomings of the previous law on the subject, the new law under consideration was passed.

We construe the act to definitely declare that no valid lien can be asserted against a motor vehicle unless it is disclosed by a valid certificate of title regularly issued by the Department of Roads and Irrigation, even though an asserted lien has been previously filed in the office

of the county clerk as provided by the registration statutes. See Commercial Credit Co. v. American Mfg. Co. (Tex. Civ. App.), 155 S. W. 2d 834.

In Nichols v. Bogda Motors, Inc., 118 Ind. App. 156, 77 N. E. 2d 905, it was held that the statute relating to certificates of title to motor vehicles was enacted for the protection of owners of such vehicles, those holding liens thereon, and the public; and that one holding a lien upon a motor vehicle must, insofar as he can reasonably do so, protect himself and others thereafter dealing in good faith, by complying and requiring compliance with applicable laws concerning certificates of title to motor vehicles.

This court said in Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483, that the very purpose of the law is to protect ownership against fraud, quoting from Mock v. Kaffits, 75 Ohio App. 305, 62 N. E. 2d 172. The Certificate of Title Act in Ohio is very similar to the act in this state.

We now make reference to certain parts of sections of the act involved in this appeal.

Section 60-110, R. S. 1943, provides in part that sections 36-207, 36-208, 36-301, 36-302, and 36-303 shall never be construed to apply to or to permit or require the deposit, filing or other record whatsoever of a chattel mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract or similar instrument, or any copy of the same covering a motor vehicle.

It will be observed that the foregoing language indicates that the Legislature intended to eliminate the previous practice of filing chattel mortgages on motor vehicles in the chattel mortgage records in the offices of county clerks in the several counties.

As stated in Higgins v. Robertson (Tex. Civ. App.), 210 S. W. 2d 250, the Certificate of Title Act repealed and superseded portions of previous chattel mortgage

registration statutes affecting registration of mortgage liens on automobiles.

Section 60-106, R. S. 1943, provides in part: "Application for a certificate of title shall be made upon a form prescribed by section 60-114, * * *." The form prescribed by section 60-114, R. S. 1943, provides headings and space for the notation of liens thereon.

Section 60-106, R. S. 1943, also provides that the application for certificate of title shall be filed with the clerk of the county in which the applicant resides if the applicant is a resident of this state. It further provides if a certificate of title has not previously been issued for such motor vehicle in this state, the application, unless otherwise provided for in the act, shall be accompanied by a manufacturer's or importer's certificate as provided for in the act, or by a proper bill of sale or other evidence of ownership required by the law of another state from which such motor vehicle was brought into this state.

In the instant case the automobile in question was purchased in the State of Colorado, and the purchaser was given a bill of sale by the dealer which met the legal requirements of that jurisdiction. As the evidence shows, the chattel mortgage executed by the purchaser to the dealer was not noted on the bill of sale.

Section 60-110, R. S. 1943, provides in part: "The holder of a chattel mortgage, trust receipt, conditional sales contract or similar instrument, upon presentation of such instrument to the clerk of the county where such certificate of title was issued together with the certificate of title and the fee prescribed by this act, may have a notation of such lien made on the face of such certificate of title."

It will be observed by the foregoing language that the dealer, who is generally the person acquiring a lien upon sale of motor vehicles when a new certificate is required, as was the case here, is enabled to obtain a certificate of title himself in the name of the purchaser. Thus the dealer personally is able to determine that the

lien is noted on the certificate of title. This was not the manner in which this transaction was handled.

A holder of a mortgage lien on an automobile owes a duty to see that the mortgagor has complied with the Certificate of Title Act in order to protect such lien, as well as innocent purchasers of automobiles. A chattel mortgage lien cannot be asserted against an automobile unless disclosed by a valid title certificate regularly issued by the county clerk, though previously filed in the county clerk's office as provided by other chattel mortgage registration statutes. An automobile mortgage lien, not shown in the title certificate, is not valid against a subsequent innocent purchaser of an automobile or holder of a mortgage lien shown in the certificate nor enforceable against the automobile in such purchaser's possession. An automobile mortgage lien, not shown in the chain of title to the automobile, does not prevail over the title to and lien on an automobile claimed by a subsequent purchaser and mortgagee without knowledge of the previous lien. See Higgins v. Robertson, *supra*. See, also, Ball Bros. Trucking Co. v. Sorenson (Tex. Civ. App.), 191 S. W. 2d 908.

The plaintiff was in a position so that it could reasonably protect its lien and others dealing in good faith by complying with the Certificate of Title Act. The foregoing parts of the act disclose the manner and form of obtaining title to automobiles and the noting of liens on the certificate of title.

The plaintiff contends that the language appearing in section 60-106, R. S. 1943, as follows, discloses negligence on the part of the defendant for which liability attaches against him. The section provides in part: "The county clerk shall use reasonable diligence in ascertaining whether or not the facts in such application (meaning the application for certificate of title) are true by checking the application and documents accompanying the same with the records of motor vehicles in his office; and if satisfied that the applicant is the owner of

such motor vehicle and that the application is in the proper form, the county clerk shall issue a certificate of title over his signature and sealed with his seal, but not otherwise."

The evidence relied upon by the plaintiff is that the chattel mortgage with the proper filing fee was sent by mail by the plaintiff, directed to the county clerk on August 11, 1948, and received by the defendant prior to the time Walker made application for the certificate of title. Therefore, the plaintiff contends, that the chattel mortgage accompanied the application and constituted a record in the county clerk's office which he was obligated by the duties of his office and as an administrative officer to check, which he failed, neglected, and refused to do.

The word "record" used in connection with instruments to be filed evidencing indebtedness against motor vehicles, must by necessity mean a public record, defined as follows: A public record is a written memorial made by a public officer authorized by law to make it. It is required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done. See Amos v. Gunn, 84 Fla. 285, 94 So. 615. See, also, People v. Purcell, 22 Cal. App. 2d 126, 70 P. 2d 706.

In that part of section 60-106, R. S. 1943, requiring the clerk to use reasonable diligence in ascertaining whether or not the facts in such application are true by checking the application and documents accompanying the same with records of motor vehicles in his office, the word "accompanying" means to go along with, or to accompany each other, and should, as nearly as possible, be simultaneous. See 1 Stroud's Judicial Dictionary (2d ed.), p. 17. The word "simultaneous" means taking place or operating at the same time. See Webster's New International Dictionary (2d ed.), p. 2342.

The words "together with," as used in section 60-110,

R. S. 1943, heretofore set out, mean conjointly; by combined effort; along with; in union with. See, 41 Words and Phrases (Perm. ed.), p. 716; Webster's New International Dictionary (2d ed.), p. 2660. This phrase does not mean "and also," but "at the same time as"; therefore, a bill of sale and its affidavit must be registered simultaneously. See 3 Stroud's Judicial Dictionary (2d ed.), p. 2068.

In view of the evidence, the parts of the act set forth, and the authorities cited, we conclude that by the mailing of the chattel mortgage held by the plaintiff to the defendant, and which was apparently in his office at the time the certificate of title was issued, the chattel mortgage did not "accompany" the application for the certificate of title, nor was it "together with" the application for the certificate of title as required by the act, but was separate therefrom; was not such a "public record" which the defendant in the course of his official duties was obligated to check before issuing the certificate of title, and no negligence exists on his part by his failure to do so; and he is not liable for damages suffered by the plaintiff.

The defendant was not guilty of malfeasance in office as provided for in section 76-218, R. R. S. 1943, and we deem discussion of this finding by the trial court unnecessary in the light of our conclusion.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.