FIRST NATIONAL BANK OF OMAHA, APPELLEE, v. PROVIDENT FINANCE COMPANY, APPELLANT.

125 N. W. 2d 78

Filed December 6, 1963. No. 35461.

Edward Shafton and Bernard E. Vinardi, for appellant.

Finlayson, McKie & Kuhns, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The First National Bank of Omaha filed an action at law against. Monte White Leasing Company, Monte White Motors, Inc., and Provident Finance Company, defendants, to obtain possession of a 1960 Chevrolet station wagon, the possession of which is alleged on information and belief to be in the Provident Finance Company, or, in the alternative for damages for the value of the 1960 Chevrolet station wagon if it could not be returned. The action was dismissed as to Monte White Leasing Company and Monte White Motors, Inc., and trial proceeded between the First National Bank of Omaha and the Provident Finance Company, based upon a stipulation of facts and oral testimony. Jury trial was waived. The trial court rendered judgment in favor of the plaintiff, the First National Bank of Omaha, that it was entitled to the immediate possession of the 1960 Chevrolet station wagon, and if delivery thereof could not be made, the First National Bank of Omaha recover from the Provident Finance Company the sum of

$1,404.25, the value of the said property. Provident Finance Company filed a motion for new trial which was overruled. The Provident Finance Company perfected appeal to this court.

The First National Bank of Omaha is a corporation organized and existing under and by virtue of the laws of the United States pertaining to national banks, with its principal office and place of business in the city of Omaha. The Monte White Leasing Company is a corporation organized and existing under and by virtue of the laws of the State of Nebraska, with its principal office and place of business in the city of Omaha. Monte White Motors, Inc., is a corporation organized and existing under and by virtue of the laws of the State of Nebraska, with its principal office and place of business in the city of Omaha. The Provident Finance Company is a corporation organized and existing under and by virtue of the laws of the State of Nebraska, with its principal office and place of business in the city of Omaha.

For convenience the First National Bank of Omaha will be referred to as the Bank; Provident Finance Company will be referred to as Provident; Monte White Leasing Company as the Leasing Company; and Monte White Motors, Inc., as White Motors.

The allegations of the Bank's petition and the answer of Provident need not be set forth in view of the stipulation of facts and the oral testimony in addition thereto.

The stipulation of facts may be summarized as follows. After identifying the corporate capacity of the Bank, Provident, the Leasing Company, and White Motors, it was stipulated that on or about July 11, 1960, White Motors and the Leasing Company entered into a certain conditional sales contract by which White Motors sold to the Leasing Company one 1960 Chevrolet station wagon, serial No. 01135S173915. This station wagon was titled to the Leasing Company by a Nebraska certificate of title No. 1-1242328. An exhibit attached to the Bank's petition contains the conditional sales contract, also titled

retail installment contract, showing a total balance of
$3,064.50, payments to be made in 36 monthly install-
ment payments of $85.12 each, beginning August 25, 1960,
also a certificate of title to a motor vehicle dated July
12, 1960, showing the owner to be the Leasing Company,
and noted thereon a first lien of the Bank under date of
March 2, 1962.

On July 11, 1960, the conditional sales contract was
assigned and transferred by White Motors, by Monte
White president, to the Bank, and the aforesaid certi-
ficate of title was delivered to the bank. The same was
from said date held by the Bank.

On March 2, 1962, the Bank filed the conditional sales
contract in the office of the county clerk of Douglas
County, and the same was on said date, by the county
clerk, noted on the certificate of title.

On July 20, 1961, Monte White, as president of the
Leasing Company, without knowledge of the Bank or
Provident, executed an application for certified copy of
the certificate of title under oath, and delivered the same
to the county clerk of Douglas County, stating that the
aforesaid certificate of title had been lost or destroyed
and requesting the issuance of a certified copy of the said
certificate of title. Said application was by the county
clerk of Douglas County forwarded to the Motor Vehicle
Department of the State of Nebraska. Thereafter, on
July 21, 1961, the Motor Vehicle Department of the
State of Nebraska transmitted to the county clerk of
Douglas County, authorization to issue duplicate certi-
ficate of title. On July 24, 1961, a duplicate certificate of
title No. 1-24527 was issued by the office of the county
clerk of Douglas County, and received from said clerk
by the Leasing Company, said duplicate certificate of
title being an exact duplicate, and so marked, of the
aforesaid certificate of title No. 1-1242328, covering the
same motor vehicle. No lien was noted on the duplicate
certificate of title.

On October 3, 1961, Monte White, as president, for and

on behalf of the Leasing Company, transferred the aforesaid motor vehicle to White Motors by executing the appropriate transfer in due form on the reverse side of the aforesaid duplicate certificate No. 1-24527. Thereafter, and also on October 3, 1961, pursuant to due and appropriate application on the back of certificate No. 1-24527, certificate of title No. 1-1342625 was issued by the county clerk of Douglas County in the name of White Motors for the 1960 Chevrolet station wagon, serial No. 01135S173915, showing that White Motors was the sole owner of such motor vehicle without any lien noted on the said certificate of title.

On November 24, 1961, White Motors, by its president Monte White, executed and delivered to Provident its promissory note in the principal sum of $1,308.58, dated November 24, 1961, due and payable 1 month thereafter. As security for the promissory note White Motors, by its president Monte White, executed and delivered to Provident a chattel mortgage on the 1960 Chevrolet station wagon, serial No. 01135S173915. Simultaneously with the delivery of the aforesaid note and mortgage White Motors, by its president Monte White, delivered to Provident the aforesaid certificate of title No. 1-1342625, dated October 3, 1961, evidencing title to the Chevrolet station wagon in White Motors, free and clear of any liens, and said certificate of title was at all times in the possession of Provident.

Provident filed the aforesaid chattel mortgage in the office of the county clerk of Douglas County on March 12, 1962, and the same was noted on the aforesaid certificate of title by the county clerk of Douglas County.

Provident had no knowledge of the existence of the aforesaid conditional sales contract and certificate of title relating to such motor vehicle held by the Bank, on November 24, 1961, or any time prior thereto.

Provident, in accordance with the customs and practices in the trade, permitted such motor vehicle to be

placed on the used car sales lot of White Motors for sale, until taking possession as hereinafter stated.

White Motors defaulted in the payment of the promissory note and, in accordance with the terms and conditions of the aforesaid chattel mortgage, Provident took possession of the aforesaid motor vehicle and continued to maintain possession thereof.

At no time did the Bank have possession of the said motor vehicle.

Provident called as a witness a vice president of the Bank who testified that he had been employed by the Bank for 26 years and had been in charge of the installment loan department of the Bank for about 10 years; that the installment loan department does both wholesale and retail business; that on July 11, 1960, this witness acquired the retail installment contract for the Bank as specified in the stipulation of facts; and that the Bank's lien was recorded on March 2, 1962, under his direction. This witness further testified that he knew the procedure for recording such conditional sales contracts; that he knew of the statute providing for the recording of conditional sales contracts and noting them on the certificates of title, and knew there were risks and hazards involved in failing to do so, stating: "The risk would be basically fraud or bankruptcy"; and that it had been an established plan of the Bank, applied in the present matter, not to file conditional sales contracts and not to have them shown on the title certificate.

On cross-examination this witness testified that mortgages and conditional sales contracts were not recorded as a matter of convenience for the Bank, and the volume of business in this section would require much more work in running to the courthouse to file and then to release them; and that the Bank obtains and retains a certificate of title in accepting a mortgage or a conditional sales contract on an automobile which it retains in its possession, which is the usual custom of banks and finance companies. On redirect examination this wit-

ness testified that the convenience of nonfiling was the convenience of the Bank and not any convenience to the dealer.

The Bank called the vice president of Provident who had supervision over the making of mortgages on motor vehicles who testified that exhibit A attached to the answer of Provident is a promissory note which, as shown by the exhibit, on or about November 24, 1961, White Motors executed and delivered to Provident in the amount of $1,308.58. He identified another exhibit attached to the answer of Provident, stating that it was a chattel mortgage covering the note and the motor vehicle in question, and securing the note; that at the time Provident made the loan and secured the mortgage it obtained a certificate of title to the motor vehicle which was recorded on March 12, 1962; that Provident held the certificate of title without causing the mortgage to be recorded on the certificate of title from the date it took the note and mortgage until March 12, 1962; that it was the usual practice and custom of Provident not to cause its mortgages to be recorded on the certificates of title, which was generally true in the trade; and that the reason for doing so is to avoid bookkeeping and the running around to the courthouse to have the mortgage recorded and then when the mortgage is paid off, executing a release which has also to be recorded.

On cross-examination this witness testified that certain risks and hazards are connected with such operation, which is part of the business risk; that Provident ran the risk of another mortgage following duplicate titles that can be obtained; that he was acquainted with the provisions of the statutes of this state relating to the filing of chattel mortgages and conditional sales contracts; and that notwithstanding such provisions, Provident and other companies engaged in the small loan business or installment loan business adopt a plan of not filing such instruments.

Provident poses several questions which it considers

to be involved in this appeal. We deem it unnecessary to set forth the same for the reason that such questions amount to an assignment of error that the judgment rendered is contrary to the evidence and to the law in this case.

The defendant Provident contends that a lien against a motor vehicle is invalid as to a subsequent lienholder, and cannot be recognized by any court, when the first lienholder fails to file said lien, as provided by Chapter 60, article 1, R. R. S. 1943, until after the subsequent lien has been acquired by an innocent purchaser; and that such rule applies where the subsequent lienholder has obtained possession of the motor vehicle and the prior holder of the lien has never had possession of the motor vehicle.

The Bank contends that one who claims an interest in a motor vehicle under a duplicate certificate of title, falsely obtained, has no right as against the holder of the original certificate of title; and that the making of a false affidavit to obtain a duplicate certificate of title is a crime punishable by a fine or imprisonment. See § 60-116, R. R. S. 1943.

The following statutes are applicable.

Section 60-105, R. S. Supp., 1961, provides in part: "No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, * * * sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this act."

Section 60-110, R. R. S. 1943, provides in part: "Any mortgage, conveyance intended to operate as a mortgage, trust receipt, *conditional sales contract or other similar instrument* covering a motor vehicle, if such instrument is accompanied by delivery of such manufacturer's or importer's certificate and followed by actual and continued possession of same by the holder of said

instrument or, *in the case of a certificate of title, if a notation of same has been made by the county clerk on the face thereof, shall be valid as against the creditors of the mortgagor, whether armed with process or not, and subsequent purchasers, mortgagees and other lien-holders or claimants but otherwise shall not be valid against them.* * * * The holder of a chattel mortgage, trust receipt, *conditional sales contract or similar instrument,* upon presentation of such instrument to the clerk of the county where such certificate of title was issued together with the certificate of title and the fee prescribed by this act, *may have a notation of such lien made on the face of such certificate of title. The county clerk shall enter said notation and the date thereof over the signature of such officer or deputy and the seal of office, and also note such lien and the date thereof on the duplicate of same on file and on that day shall notify the Department of Motor Vehicles, which shall do likewise.* The county clerk shall also indicate by appropriate notation and on such instrument itself the fact that such lien has been noted on the certificate of title." (Emphasis supplied.)

The following cases are applicable.

In the case of Securities Credit Corp. v. Pindell, 153 Neb. 298, 44 N. W. 2d 501, a summary of facts is as follows: On August 5, 1948, Walker purchased an automobile from a dealer at Sterling, Colorado. On the same day he executed a note and chattel mortgage to the dealer, which constituted a lien upon the automobile purchased from the dealer. On the same day this note and mortgage were assigned by the dealer to the Securities Credit Corporation. The dealer issued a bill of sale to Walker. This bill of sale did not show any lien on the automobile. On August 11, 1948, the Securities Credit Corporation mailed a letter to Pindell, the county clerk, enclosing the note and mortgage and a check to · cover filing fees, and requesting Pindell to note the lien on the certificate of title when Walker came in to the

county clerk's office for his new title. On Saturday evening, August 14, 1948, Walker contacted Pindell with reference to procuring a certificate of title to the automobile, and presented Pindell with the bill of sale upon which no liens were noted. Pindell then filled out an application for a certificate of title which was signed by Walker and which did not show a lien on the automobile. Thereafter Walker accompanied Pindell to his office where a certificate of title to the automobile was issued by Pindell to Walker. The lien of the Securities Credit Corporation was not noted on the certificate of title. This court said: "We construe the act to definitely declare that no valid lien can be asserted against a motor vehicle unless it is disclosed by a valid certificate of title regularly issued by the Department of Roads and Irrigation, * * *.

"In Nichols v. Bogda Motors, Inc., 118 Ind. App. 156, 77 N. E. 2d 905, it was held that the statute relating to certificates of title to motor vehicles was enacted for the protection of owners of such vehicles, those holding liens thereon, and the public; and that one holding a lien upon a motor vehicle must, insofar as he can reasonably do so, protect himself and others thereafter dealing in good faith, by complying and requiring compliance with applicable laws concerning certificates of title to motor vehicles.

"This court said in Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483, that the very purpose of the law is to protect ownership against fraud, quoting from Mock v. Kaffits, 75 Ohio App. 305, 62 N. E. 2d 172. The Certificate of Title Act in Ohio is very similar to the act in this state. * * *

"A holder of a mortgage lien on an automobile owes a duty to see that the mortgagor has complied with the Certificate of Title Act in order to protect such lien, as well as innocent purchasers of automobiles. * * * An automobile mortgage lien, not shown in the title certificate, *is not valid* against a subsequent innocent purchaser

of an automobile or holder of a mortgage lien shown in the certificate nor enforceable against the automobile in such purchaser's possession. An automobile mortgage lien, not shown in the chain of title to the automobile, does not prevail over the title to and lien on an automobile claimed by a subsequent purchaser and mortgagee without knowledge of the previous lien. * * *

"The plaintiff was in a position so that it could reasonably protect its lien and others dealing in good faith by complying with the Certificate of Title Act." (Emphasis supplied.)

Terry Bros. & Meves v. National Auto Ins. Co., 160 Neb. 110, 69 N. W. 2d 361, was an action in replevin brought by the plaintiff against the defendant National Auto Insurance Company to secure possession of a Mercury coupé automobile. On January 4, 1950, Gibreal Auto Sales, Inc., intervener in the case, sold the automobile to Bethke under a conditional sales contract, retaining the certificate of title but delivering possession of the automobile to Bethke. On January 24, 1950, Bethke told Gibreal that he was stopped by a policeman for not having proper license plates on his automobile and the car was impounded. He requested the certificate of title to enable him to buy his license and get the automobile from the police station. Gibreal transferred the certificate of title to Bethke. The certificate of title had no lien noted thereon. Bethke transferred the certificate of title to Bilyeu. Gibreal obtained the automobile from the police garage. On February 20, 1950, Gibreal sold the automobile to Slayman, delivering possession of the automobile but advising that he was having difficulty with the certificate of title. The automobile was sold under a conditional sales contract which in turn was sold by Gibreal to the Live Stock National Bank. On March 13, 1950, the automobile was stolen from Slayman. On March 13, 1950, Bilyeu sold the automobile to the plaintiff, delivering the certificate of title showing the automobile to be free and clear of liens.

On March 20, 1950, the plaintiff sold the automobile to Guzinski who obtained title thereto. On May 3, 1950, National Auto Insurance Company, which had issued a policy to Slayman, took possession of the automobile from Guzinski. Thereafter the plaintiff obtained an assignment of the certificate of title from Guzinski. On May 17, 1950, the plaintiff filed an action to replevin the automobile from the National Auto Insurance Company, and Gibreal intervened, claiming the right to possession of the automobile. Section 60-105, R. R. S. 1943, as heretofore set forth, was cited in the opinion. This court said: "The possession by Bilyeu of a Nebraska certificate of title was evidence of ownership of the automobile. The certificate was in his name and conclusive of his ownership under the circumstances of the instant case, and appellee (Terry Bros. & Meves) was justified, under the circumstances, in treating him as the owner thereof. * * *

"In the light of the facts as shown by the record, the following its applicable: When personal property is obtained from its owner by a sale induced by the fraud of the buyer, and as a result thereof title passes to the party guilty of the fraud, *an innocent purchaser of the property from the fraudulent buyer or from one to whom he has surrendered it, for value and without knowledge of the fraud, takes the title thereto free from the equity of the original seller* to rescind the sale and reclaim the property. In other words, if after seller delivers possession to the buyer pursuant to a sale induced by the buyer's fraud the property has passed into the hands of a bona fide purchaser for value, the right of the original seller to recover the property is lost. * * * (Cases are cited.)

"An innocent purchaser is one who buys property for a present valuable consideration without knowledge sufficient to charge him in law with notice of any infirmity in the title of the seller. * * * (Cases are cited.)

"*The appellee* (Terry Bros. & Meves) *was not in a posi-*

*tion to know or have knowledge of an alleged fraud, nor was the appellee in a position to know or have knowledge that any person claimed ownership or a lien on the automobile for the reason that the certificate of title disclosed the seller to be the owner of the automobile.* The certificate showed that Bilyeu acquired the title from Bethke who was present at the time the appellee purchased the automobile. * * *

"It is a general rule that where one of two innocent persons must suffer by the acts of a third, he whose conduct, acts or omissions enables the third person to occasion loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment. * * * we deem it applicable when applied to the appellee's contention." (Emphasis supplied.)

The foregoing authorities need no explanation as to the obligations and duties of a person holding a lien upon a motor vehicle, and indicate clearly that under the statutes and the authorities cited, such lien must be noted.

As shown by the facts, the Bank acquired its assignment of the conditional sales contract on July 11, 1960, obtained a certificate of title, and kept possession of it. After a year and 9 days elapsed, the Leasing Company, on July 20, 1961, made application for a duplicate certificate of title. Had the Bank recorded its lien, as provided for by statute, no duplicate certificate of title would have been issued. The duplicate certificate of title did not show the notice of any lien held by the Bank. The Bank, by its conduct, made possible the conduct of the Leasing Company to obtain the duplicate certificate of title. Because the Leasing Company was able to obtain a duplicate certificate of title in view of the failure of the Bank to record its lien, the Leasing Company was able to transfer title to White Motors on October 3, 1961, almost 15 months after assignment of the conditional sales contract to the Bank. Failure of

the Bank to record its lien and protect itself and others, as required by law, caused Provident, in good faith and without knowledge of the facts, to rely upon the certificate of title presented and delivered to it which was issued by the county clerk of Douglas County in accordance with the provisions of the governing and applicable law. Provident altered its position to its detriment because of the failure of the Bank to record its lien. The Bank did record its lien on March 2, 1962, on the certificate of title which had been in the Bank's possession since July 11, 1960. Provident recorded its lien on March 12, 1962. It is immaterial that a recording by the Bank on an earlier certificate of title predated the recording by Provident, because section 60-110, R. R. S. 1943, constitutes an unrecorded lien invalid as to a subsequent purchaser or lienholder and the Bank is not subsequent to Provident, so the Bank's lien is the invalid one, and because possession of the motor vehicle was actually in Provident as the subsequent lienholder. Accordingly, the circumstances of this case require application in favor of Provident under the general rule that where one of two innocent persons must suffer by the acts of a third, he whose conduct, act, or omission enabled such third person to occasion the loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment. See Terry Bros. & Meves v. National Auto Ins. Co., *supra*. There are many cases holding the same principle which need not be cited.

The Bank argues that one who claims an interest in a motor vehicle under a duplicate certificate of title, falsely obtained, has no rights as against the holder of the original certificate of title, and cites as authority the latest case in this state on the subject, Allstate Ins. Co. v. Enzolera, 164 Neb. 38, 81 N. W. 2d 588.

In citing the above case, the Bank argues that a certificate of title is essential to convey the title to a motor vehicle; that the Leasing Company could not legally

transfer the title to the motor vehicle to White Motors without the certificate of title; that it required the commission of a criminal act to enable the Leasing Company to transfer title to the motor vehicle to White Motors; and that as long as the Bank retained possession of the certificate of title it was impossible for the Leasing Company to sell the motor vehicle because it could not present indicia of title.

In the cited case, Allstate Ins. Co. v. Enzolera, *supra,* one Matha sold a motor vehicle in California to Richter, delivering a bill of sale, a Delaware certificate of title, and possession of the motor vehicle. Richter obtained a California certificate of title. The motor vehicle was stolen from Richter's garage. His insurance carrier, Allstate Insurance Company, paid the loss and a certificate of title was assigned to it. After the theft of the motor vehicle Matha, who had sold the automobile in California to Richter, obtained a Nebraska certificate of title based upon a duplicate certificate of title he had obtained in Ohio. Then Matha sold the motor vehicle to Enzolera. Allstate Insurance Company, as assignee of the certificate of title from Richter, was granted a writ of replevin and the right of possession. Neither Richter nor Allstate Insurance Company, his insurance carrier, had in any way failed to record either the ownership or a lien as the plaintiff Bank did in the instant case. The facts in the cited case do not present an issue of superior lien rights when a lien has not been recorded, as here required by statute, before the subsequent lienholder acquired its lien, as is presented in the instant case.

The principal rule applied in Allstate Ins. Co. v. Enzolera, *supra,* pertains to the inability of a thief to pass title, an issue that is not presented between the parties in the instant case. The court said: "In the light of these facts and well-established principles of law neither the thief nor anyone taking through him took or could take any title to the automobile. Richter remained the

owner with the right to recover possession of it wherever found, subject however to the right of a transferee to take it instead, in case Richter had transferred his title and interest."

The rule applicable is stated in State ex rel. Sorensen v. Nebraska State Savings Bank, 127 Neb. 262, 255 N. W. 52: "Generally, a thief can acquire no title to stolen property, nor can title to personal property be acquired through another's larceny or theft."

As stated in Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483: "It was the larceny, and not a sale by or any negligent act of plaintiff, which was the proximate and effective cause of injury to the parties."

The cited case is distinguishable from the instant case. In the case of a theft of a motor vehicle and a subsequent sale, the owner generally has not directly or indirectly aided, abetted, or assisted and done nothing to enable the theft to take place. In the instant case, clearly the failure of the Bank to record its lien aided, abetted, and assisted in the issuance of the duplicate certificate of title from which was obtained the next original certificate of title upon which Provident properly relied. The Nebraska law regarding motor vehicle titles and liens was designed to prevent such issuance of certificates of title by providing that liens must be recorded, and if such had been recorded no such certificate of title could have been issued as was issued in this case. The record indicates that the vice president of the Bank was well aware of the risks and hazards, including the risk of fraud relating to the filing of liens. Provident was also well aware of the same facts.

The custom indulged in by banks, finance companies, and others in withholding notation of chattel mortgages on the certificates of title to a motor vehicle is not a wholesome procedure. In the light of the statutes and the cited cases, it must be concluded that any such holder of a chattel mortgage should note the same on the cer-

tificate of title in order to avoid just what happened in the instant case.

The plaintiff in a replevin action has the burden of proof and must recover on the strength of its or his right in or to the property and not upon any weakness of the interest of the defendant.

Under the facts in the instant case, the Bank failed to fulfill its burden of proof to establish a valid claim as against Provident, an innocent purchaser for value, which obtained possession of the motor vehicle upon default under the terms of a chattel mortgage held by it.

It must be conceded that the making of a false affidavit is a crime under section 60-116, R. R. S. 1943. Nevertheless, it is a crime which would not have been effective in obtaining a new certificate of title had the Bank recorded its lien. The Bank was required by statute to record its lien, not only to protect others but also to preserve its lien as against subsequent lienholders.

We conclude, for the reasons given in this opinion, that the judgment of the trial court should be reversed and the plaintiff's action dismissed.

REVERSED AND DISMISSED.

YEAGER, J., concurring.

I voted for and fully agree with the foregoing opinion and decision. I have the opinion, however, that to it should be added something so that confusion may not flow from it because of at least one earlier decision of this court which is contrary to it and is effectually overruled but to which no reference is made. This I think should have been pointed out in the opinion herein.

To make the matter clear it becomes necessary to first refer back to the case of Blixt v. Home Mutual Ins. Co., 145 Neb. 717, 18 N. W. 2d 78. In that case, with reference to the subject of certificates of title to automobiles as evidence, this court said:

"This provision is part of an act the design of which is to control within fixed limits the use and operation

of motor vehicles and to establish methods and means for conveyance of title in order that the provisions for control and use may be made effective. It is a regulatory act under the police power. As such, no doubt, it is a valid exercise of the police power.

"The provision goes far beyond a mere regulation under the police power. It amounts to an invasion of the right of contract, the impairment of rights of property and a restriction upon the right of the courts to weigh and consider evidence and to make determinations with regard to title and ownership of property and contractual rights and obligations.

. "The plaintiff has cited no case and we have found none the effect of which is to say that the legislature is empowered, under the guise of a police regulation, to validly invade the field of contract and property rights and to restrict the courts in the exercise of their proper functions.

"We must therefore hold that this statutory provision may not be considered as in aid of plaintiff's cause of action. The case must turn on other considerations."

What was said there was directly and specifically overruled by the opinion in Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913. With specific reference to the second paragraph quoted above from the opinion in Blixt v. Home Mutual Ins. Co., *supra,* it was said: "Insofar as the last statement is concerned we think we were in error. After a further study of the law, particularly in view of the holdings of other states under like or comparable statutes together with our previous holdings, we are now of the opinion that the act represents an authorized exercise of the police power by the Legislature to regulate the transfer of title and ownership of automobiles, which is a matter of public concern. As such it is not violative of any part of the organic law of either the State of Nebraska or the United States especially with reference to the right of contract.

the delegation or restriction of judicial powers, and due process of law."

The effect of the opinion in this case is to overrule what was said in Loyal's Auto Exchange, Inc. v. Munch, *supra*, and to return to the holding in Blixt v. Home Mutual Ins. Co., *supra*. This change of position of the court, in order to avoid confusion and misunderstanding for the future, should have been pointed out in the opinion which has been adopted.